FILED

2009 MAR 10 P 1:12

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

1  MEISELMAN, DENLEA, PACKMAN,
   CARTON & EBERZ P.C.
2  Jeffrey I. Carton (*pro hac vice* application to be submitted)
   Jerome Noll (*pro hac vice* application to be submitted)
3  1311 Mamaroneck Avenue
   White Plains, New York 10605
4  (914) 517-5000

5
   CALDWELL LESLIE & PROCTOR, PC
6  ROBYN C. CROWTHER, SBN 193840
   Crowther@caldwell-leslie.com
7  ALBERT GIANG, SBN 224332
   Giang@caldwell-leslie.com
8  1000 Wilshire Blvd., Suite 600
   Los Angeles, California 90017-2463
9  Telephone: (213) 629-9040
   Facsimile: (213) 629-9022
10
   Attorneys for Plaintiffs
11 ROMAN HUFF
   and all others similarly situated
12

File By Fax

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROMAN HUF, on behalf of himself and all    Case No. C 09 01064 RS
others similarly situated,

                    Plaintiff,              **CLASS ACTION COMPLAINT**

           v.                                **DEMAND FOR JURY TRIAL**

APPLE INC.,

                    Defendant.


Plaintiff, by his attorneys, Meiselman, Denlea, Packman, Carton & Eberz P.C., as and for his class action complaint, alleges, with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

-1-

CLASS ACTION COMPLAINT

Dockets.Justia.com

## Nature of this Case

1. This class action seeks to redress the widespread and commonplace characteristic defect and design flaw existing at the time of manufacture which renders Apple's iMac G5's displays inoperative during the computer's useful life. This inherent defect manifests itself shortly after an iMac G5 (hereinafter "iMac G5" or "iMac") owner begins using his or her iMac. Typically, the iMac's display begins to degrade, with prominent vertical lines appearing across the screen. In addition, some iMac owners also experience color degradation: a change of colors from the top to the bottom of the iMac screen. Stated differently, a solid colored background appears normal at the top of the screen and gradually changes color at the bottom of the screen. At the bottom of the display, the color appears faded or washed out. For example, medium blue becomes light blue and light colors become white. As the entire display eventually is rendered inoperable, either because of vertical lines appearing across the display screen and/or color degradation, consumers who choose to repair their defective displays can incur costs of more than $800 in parts and labor.

2. Moreover, the inherent defect can manifest itself months or even years after purchase of a new iMac G5.

3. In response to thousands of complaints from its iMac customers, including an online petition signed by almost 2,200 iMac purchasers, Apple has refused to repair the defective displays.

4. As a result of Apple's actions, thousands of its customers have purchased iMac computers with defective displays. Apple has refused to repair or replace the defective iMac displays free of charge, and has refused its customers' requests for refunds or exchanges of their defective iMacs. As such, thousands of Apple iMac owners have been compelled to either repair or replace their defective displays at their own expense or lose permanently the ability to use their computers.

CLASS ACTION COMPLAINT

5. This suit is brought on behalf of a nationwide class of all persons who have purchased Apple iMac G5 computers manufactured with defective displays, between January 1, 2005, to the present, and who were damaged thereby (the "Class"). It seeks, *inter alia*, restitution and/or compensatory damages for Plaintiff and each Class member, including but not limited to: reimbursement of expenses incurred to repair or replace defective iMac displays; attorneys' fees; and the costs of this suit.

## Jurisdiction and Venue

6. Jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d), as Plaintiff's citizenship is diverse from Defendant, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

7. This Court has supplemental jurisdiction over Plaintiff's state and common law causes of action pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of California.

9. Venue is also proper in this district under 28 U.S.C. § 1391(a)(2), on the grounds that a substantial part of the events relating to Plaintiff's claims occurred in the Northern District of California.

## Intradistrict Assignment

10. Plaintiff respectfully requests that this matter be assigned to the San Jose Division because a substantial portion of the actions and omissions giving rise to this action occurred in Santa Clara County, California. Specifically, Defendant's marketing of the iMac G5 and Defendant's refusal to repair the defective displays all emanated from its principal place of business in Cupertino, California.

CLASS ACTION COMPLAINT

## Parties

11. Plaintiff Roman Huf is a resident of the State of Florida, County of Hillsborough. Mr. Huf purchased an Apple iMac G5 with a defective display directly from Apple over the Internet.

12. Defendant Apple Inc. is incorporated under the laws of the State of California, with its principal place of business located in Cupertino, California.

13. Defendant Apple Inc. does actual business throughout the State of California, including through the direct sale of its merchandise in the State and operation and maintenance of an interactive website – *apple.com* – accessible to consumers in, and residents of, California.

## Operative Facts

### A. *Apple Manufactures Defective iMac Computers*

14. Defendant Apple Inc. is a publicly traded company engaged in the business of designing, manufacturing, marketing, distributing and selling personal computers and related products and services through its own retail stores, online, direct sales, third party wholesalers and resellers. Apple has sold its iMac computers to tens of thousands of consumers throughout the United States.

15. In or about 2005, Apple began designing, manufacturing, warranting, advertising, marketing, selling and providing iMac G5 computers to consumers throughout the United States. When the iMac G5 computers were released, Apple marketed them as being designed to exacting standards and touted their many features, including the fact that each iMac G5 has a large color display. The displays are an essential feature of the computer, and the computers cannot be used if the displays are defective.

16. Based on Plaintiff and the Class' experiences, however, certain of Apple's iMac G5 computers were manufactured with defective displays. Indeed, the iMac displays have an inherent defect existing at the time the computer is

manufactured – when the iMac is used for a short period of time, the display begins to degrade, thus rendering the iMac useless.

17. Although the useful life of a desktop computer is five years, the inherent defect in the Apple iMac G5 display renders the computer substantially certain to result in malfunction during the computer's useful life.

18. Affected iMac G5 computers exhibit at least one of the following symptoms: (1) The iMac's display begins to degrade, with prominent vertical lines appearing across the screen, to the point where most, if not all, of the screen is filled with vertical lines rendering the display useless; or (2) The iMac's display begins to experience substantive color degradation, with all colors eventually fading entirely, rendering the display useless as the screen cannot display any colors whatsoever.

***B. Apple Wrongfully Refuses to Correct the Vast Majority of Defective Computers***

19. Despite the inherent defect existing in the display at the time the computers were manufactured, Apple has refused to repair malfunctioning iMac computers or reimburse consumers for the cost of replacing the display or repairing it. Apple has maintained its refusal to repair the defective computers, although the inherent defect results in malfunction during the iMac's useful life.

20. Apple claims that it is not obligated to repair defective iMac computers when the inherent defect resulted in malfunction outside Apple's purported one-year limited warranty period. Apple's refusal to repair Plaintiff's and other iMac owners' inherently defective computers, however, is wrongful because the defect that exists at the time of manufacture renders the computer substantially certain to result in malfunction during the computer's useful life thus violating Plaintiff's right to obtain a product free from defects. Accordingly, because the defect existed within the warranty period, Apple is obligated to repair, replace, correct, or otherwise provide relief to its customers.

21. Moreover, Apple's purported limitation of warranties is ineffective because it is not delivered to consumers in advance of their purchases, consumers are not permitted to negotiate the terms, and the terms of the limited warranty unreasonably favor Apple. The unconscionability of Apple's purported limitation of warranties is compounded by Apple's knowledge that it manufactured defective computers, yet continued to sell them without correcting the defects.

22. Thus, if an iMac owner finds out about the computer's defective display one year after purchase, according to Apple, he or she would have no recourse other than incurring the expense of fixing or replacing the defective display, or be stuck with a computer which he or she could not use.

23. Tens of thousands of people nationwide have purchased iMac computers manufactured with defective displays. Aside from the limited number of iMacs covered by Apple's purported one-year limited warranty period, Apple has informed Plaintiff and other customers with defective iMacs that they have no recourse other than to repair or replace the defective screens at their own expense. Apple has refused to warrant, repair or pay for any repairs relating to the iMac's defective display, or to warrant any iMac should the defect manifest itself sometime in the future.

24. To date, Apple has not taken effective action to remedy defective displays in its iMac computers. To ensure that the displays in all of its iMac computers were fit for their ordinary purpose during the computer's useful life, Apple should have tested the displays prior to selling its iMac computers. Instead, Apple sold iMac computers with displays that were not fit for ordinary use.

25. Moreover, Apple did not give adequate notice of the defect to its customers. Apple did not contact purchasers of iMac computers to notify them of the defective displays so that consumers could have their iMacs repaired during the one year warranty in effect from the date of purchase.

CLASS ACTION COMPLAINT

### C. *Plaintiff Roman Huf Purchased a Defective iMac Computer Directly from Apple*

26. On or about November 8, 2006, Mr. Huf purchased directly from Apple an iMac G5 17", serial number QP645079VUY.

27. In or about September, 2008, Mr. Huf's iMac display began exhibiting prominent vertical lines across its screen. Mr. Huf at first thought that the vertical lines were an anomaly, and that they would disappear if he rebooted his computer. He did so, but his display did not improve and was, in fact, degrading quickly. As such, more and more vertical lines began to appear on his iMac's display each time Mr. Huf turned on his computer, reaching the point where there are presently more than 20 prominent vertical lines across the screen. Mr. Huf also noticed that his display was experiencing color degradation; the colors, text and border at the bottom of his screen appear faded and washed out. It was at this time that Mr. Huf realized that his iMac display was defective, and that without the use of the display, his iMac was useless.[1]

28. Mr. Huf contacted Apple directly to have his display repaired, but Apple refused to repair or replace the defective display as Mr. Huf's computer was no longer covered by Apple's one year warranty in effect from the date of purchase. Apple did, however, inform him that it would fix the defective display, but that it would cost at least $800.00 to repair.

29. As a result of the defect, Mr. Huf cannot use his iMac for its ordinary and intended purpose, and has suffered damage.

---

[1] Mr. Huf was shocked that his iMac display had degraded after less than two years of use, as he has a Hewlett Packard computer and monitor that has been functioning without any issues for the past seven years.

CLASS ACTION COMPLAINT

### D. Thousands of Consumers Have Suffered Losses as a Result of Apple's Manufacture of Defective iMac G5 Computers

30. There have been numerous consumer complaints to various Federal and State authorities about the iMac's defective displays, and web sites are full of consumers who have complained about the fact that their iMac displays do not work. Consumers have posted complaints stating that they have had to repair or replace their defective displays at their own expense, that Apple has refused to reimburse them for the expenses incurred, and that Apple has refused to exchange defective iMac displays for iMacs with properly functioning displays.

31. Moreover, an online petition has been initiated by Apple customers who have purchased iMacs with defective displays, and which Apple has refused to repair or replace. As of the date of this Complaint, almost 2,200 iMac owners have signed the petition, providing their name, address and email address, demanding that Apple repair the defective displays or reimburse the petitioners for expenses incurred in repairing or replacing the displays.

32. Apple continued to manufacture and sell iMac computers with defective displays even after receiving thousands of complaints informing it of the specific defect alleged herein. As such, Apple profited enormously from sales of its iMac computers while Plaintiff and the Class incurred significant damages, including but not limited to the expenses incurred in repairing or replacing their defective iMac computers.

33. Apple has, and continues to this day, refused to respond to the thousands of customer complaints regarding the iMac's defective display, and has refused to repair at its own expense the defective display or compensate thousands of iMac purchasers who repaired or replaced the defective display at their own expense.

34. As referred to above, no adequate notice has been provided to Plaintiff, and no consent or bargained-for approval has been granted by Plaintiff or other Apple customers who purchased iMac computers that their computers have defective

CALDWELL
LESLIE &
PROCTOR

-7-

CLASS ACTION COMPLAINT

displays. Nor did Defendant provide any notice, adequate notice or full disclosure of the fact that its iMac computers have defective displays.

### Class Action Allegations

35.  Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class of all persons who have purchased iMac G5 computers with defective displays and who were damaged thereby, during the period from January 1, 2005, to the present (the "Class").

36.  Excluded from the Class is Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.

37.  This action is brought as a class action for the following reasons:

a.  The Class consists of at least thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.  There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

i.  whether Defendant breached the implied warranty of merchantability arising pursuant to Cal. Comm. Code § 2314 by manufacturing and selling iMac computers with defective displays;

ii.  whether Defendant violated Cal. Bus. & Prof. Code § 17200 by manufacturing and selling iMac computers with defective displays;

iii.  whether Defendant unjustly enriched itself in manufacturing and selling iMac computers with defective displays;

iv.  whether members of the Class have sustained damages and/or other compensable losses and, if so, the proper measure thereof; and

-8-
CLASS ACTION COMPLAINT

v. whether Defendant should be enjoined from selling iMac computers with defective displays.

c. The claims asserted by Plaintiff are typical of the claims of the members of the Class;

d. Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including related litigation involving consumer fraud;

e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i. Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional customers will be harmed, and Defendant will continue to retain its ill-gotten gains;

ii. It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii. When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv. A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions; and

v. The lawsuit presents no difficulties that would impede its management by the Court as a class action.

f. Defendant has acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate; and

g. The prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for Defendant and of inconsistent or varying adjudications for all parties.

CLASS ACTION COMPLAINT

38. Defendant's violations of the common law are applicable to all members of the Class, and Plaintiff is entitled to have Defendant enjoined from engaging in unlawful conduct in the future.

### FIRST CAUSE OF ACTION

**(Violation of California Business and Professions Code § 17200 et seq.)**

39. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 38 above as if fully set forth herein.

40. California Business and Professions Code § 17200 prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice[.]"

41. Apple has engaged in unlawful and unfair business acts or practices in California and nationwide, in violation of Cal. Bus. & Prof. Code § 17200, by manufacturing and selling iMac computers with defective displays to Plaintiff and other members of the Class, by failing to use reasonable care to test the displays in its iMac computers prior to sale, and by continuing to sell iMac computers with defective displays even after learning that the displays in its iMac computers were defective, all in violation of Cal. Com. Code § 2314, U.C.C. §§ 2-314, and the common law.

42. As described herein, Defendant's conduct in manufacturing and selling computers with an inherent defect that was substantially certain to result in malfunction during the computers' useful lives caused and continues to cause substantial injury to consumers, including Plaintiff and the other members of the Class. The California Commercial Code, as well as other state and federal law, embodies the public policy that prohibits manufacturers from selling such defective goods to consumers and then refusing to repair or replace the defective product, particularly when the seller knows of the defect. Thus, Defendant's acts are manifestly unfair to the Plaintiff and the Class.

CLASS ACTION COMPLAINT

43. Furthermore, as there were reasonable alternatives available to Apple to further its business interests other than voluntarily placing into the stream of commerce iMac computers with defective displays, the gravity of Defendant's wrongful conduct outweighs any purported benefits attributable to such conduct.

44. As a direct and proximate result of Defendant's actions as described herein, Plaintiff and other members of the Class have suffered, and continue to suffer, injury in fact and have lost money as a result of Defendant's deception and unfair and unlawful business practice in an amount which will be proven at trial, and which is in excess of the requisite jurisdictional amount.

45. By reason of the foregoing, Defendant has violated Cal. Bus. & Prof. Code § 17200, and is liable to Plaintiff and the other members of the Class for restitution and all other appropriate remedies, plus costs and attorneys' fees.

## SECOND CAUSE OF ACTION

**(Breach of Implied Warranty of Merchantability**

**Pursuant to Cal. Comm. Code § 2314)**

46. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 45 above as if fully set forth herein.

47. Defendant is a merchant with respect to computers, including iMac computers manufactured and sold under the Apple brand.

48. Plaintiff purchased from Defendant an iMac computer. An implied warranty that Plaintiff's iMac was merchantable arose by operation of law as part of the sale, and as part of the sales of iMac computers to other members of the Class.

49. Defendant breached the implied warranty of merchantability in that the iMac computers sold to Plaintiff and the Class were not in merchantable condition when sold or at any time thereafter, in that Plaintiff's and the Class' iMac computers have defective displays that were substantially certain to result in their malfunction during their useful life, and, in fact, did result in malfunction during the display's useful life.

CLASS ACTION COMPLAINT

50. When purchasing their iMac computers, Plaintiff and the Class were not aware of the display defect as the defect was and is not open or obvious.

51. Any attempt by Apple to limit the duration and scope of the implied warranty of merchantability is unreasonable, unconscionable and void as Apple knew or recklessly disregarded the fact that the display defect existed at the time of manufacture and might not be discovered, if at all, until such time as an iMac owner would attempt to use the display and uncover the fact that the display was defective. Apple withheld information about the display defect from iMac owners intending that owners would not uncover the inherent defect until such time as any Apple express warranty in effect expired. Moreover, the terms of Apple's express warranty were not subject to negotiation, unreasonably favored Apple, and were not provided to consumers prior to sale thus rendering any limitations unconscionable.

52. As a result of Apple's breach of the implied warranty of merchantability, Plaintiff and the Class have suffered incidental and consequential damages, including expenses incurred to repair the display defect or replace the display, and damages representing the difference between the value of the defective iMacs purchased and the value the iMacs would have had if they had been as warranted and did not have defective displays.

53. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial.

### THIRD CAUSE OF ACTION

**(Unjust Enrichment)**

54. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 53 above as if fully set forth herein.

55. Plaintiff and the Class have conferred benefits on Defendant by paying value for computers that they reasonably expected to be fully functioning during the

CALDWELL
LESLIE &
PROCTOR

-12-

CLASS ACTION COMPLAINT

computers' useful life. However, Plaintiff did not purchase a fully functioning computer as a result of an inherent defect known to Defendant.

56. Defendant knowingly and willingly accepted monetary benefits from Plaintiff and the Class, although Defendant did not provide consumers with fully-functioning computers. Rather, Defendant profited from the sales of inferior and defective products.

57. Under the circumstances described herein, it is inequitable for Defendant to retain the full monetary benefit at the expense of Plaintiff and the Class.

58. By engaging in the conduct described above, Defendant has unjustly enriched itself at the expense of Plaintiff and the Class and is required, in equity and good conscience, to compensate Plaintiff and the Class for harm suffered as a result of Defendant's actions.

59. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendant of the benefit conferred by Plaintiff and the Class.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

1. Certifying this action as a class action, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, with a class as defined above;

2. On Plaintiffs' First Cause of Action, awarding Plaintiff all appropriate remedies, including, but not limited to restitution, plus costs and attorneys' fees;

3. On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

CLASS ACTION COMPLAINT

4. On Plaintiff's Third Cause of Action, awarding Plaintiff and the Class all appropriate remedies, including but not limited to reimbursement, restitution, and disgorgement of all profits unjustly retained by Defendant;

5. Enjoining Apple from continuing to engage in unlawful and unfair business practices regarding iMac computers manufactured and sold with defective displays;

6. Ordering Apple to refund to Plaintiff and the Class the moneys paid to Apple for iMac computers with defective displays;

7. Awarding Plaintiff interest, costs and attorneys' fees; and

8. Awarding Plaintiff such other and further relief as this Court deems just and proper.

DATED: March 11, 2009

Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
ROBYN C. CROWTHER
ALBERT GIANG

By _____Robyn C. Crowther_____
ROBYN C. CROWTHER
Attorneys for Plaintiffs

CLASS ACTION COMPLAINT

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

DATED: March 11, 2009

Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
ROBYN C. CROWTHER
ALBERT GIANG

By *Robyn C. Crowther (ag)*
ROBYN C. CROWTHER
Attorneys for Plaintiffs

CLASS ACTION COMPLAINT