1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 8/21/2009**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

ARAM HOVSEPIAN,

                    Plaintiff,

        v.

APPLE, INC. and DOES 1-10 inclusive,

                    Defendants.

Case Number 08-5788 JF (PVT)
Case Number 09-1064 JF (PVT)

ORDER[1] (1) GRANTING MOTIONS
TO DISMISS WITH LEAVE TO
AMEND AND (2) DENYING
WITHOUT PREJUDICE MOTIONS
TO STRIKE

[re: docket nos. 27 & 28; 36 & 36]

ROMAN HUF,

                    Plaintiff,

        v.

APPLE, INC.,

                    Defendant.

        Plaintiffs Aram Hovsepian ("Hovsepian") and Roman Huf ("Huf") bring these putative

class actions[2] on behalf of all persons similarly situated who purchased iMAC G5 personal

───────────────────

        [1] This disposition is not designated for publication in the official reports.

        [2] The instant actions were related by the Court on May 12, 2009.

Case Nos. 08-5788 & 09-1064
ORDER GRANTING MOTIONS TO DISMISS ETC.
(JFLC1)

1  computers from Defendant Apple, Inc. ("Apple").  Apple moves to dismiss both complaints for

2  failure to state a claim upon which relief may be granted.  Apple also moves to strike Plaintiffs'

3  class claims.  For the reasons set forth below, the motions to dismiss will be granted, with leave

4  to amend.  The motions to strike will be denied, without prejudice to renewal after Plaintiffs file

5  their amended pleadings.[3]

6                                    **I.  BACKGROUND**

7      A.  Plaintiff Hovsepian

8          Plaintiff Hovsepian, a Florida resident, purchased an iMac in October 2006.  Hovsepian

9  FAC ¶ 15.  Hovsepian alleges that vertical lines began to appear on the display screen in March

10  2008, eventually causing a visual obstruction that rendered the display screen unusable.  *Id.* ¶¶ 1,

11  15.  He alleges that Apple knew of or recklessly ignored the existence of the defect that caused

12  premature failure of the display screens, and that Apple failed to take remedial action or remove

13  the defective computers from the marketplace.  *See id.* ¶¶ 2-3.  Hovsepian alleges that Apple has

14  chosen not to take remedial action because the defect tends to arise after the expiration of the

15  product's one-year express warranty.  *See id.* ¶ 11.  Hovsepian further alleges that "thousands" of

16  purchasers have experienced this problem and that Apple is well aware of the issue.  *See id.* ¶ 9.

17          Hovsepian seeks to bring claims on behalf of a class comprised of all persons and entities

18  in the United States who made original purchases of an iMac computer, *see* Hovsepian FAC ¶

19  32.  He asserts the following claims for relief under California law:  (1) violation of the

20  California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; (2) unfair, unlawful, or

21  fraudulent business practices in violation of the California Unfair Competition Law ("UCL"),

22  Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) fraudulent omission; (4) unjust enrichment; and (5) a

23  judicial declaration that Apple's one-year limitation on warranty claims is void, invalid and

24  unenforceable.

25

26          [3] Apple's Request for Judicial Notice of the terms of the express warranty is granted, as
    both the Huf and Hovsepian complaints reference the warranty, and resolution of the claims for
27  relief will depend at least in part on the enforceability of the express warranty.  *See Hoey v. Sony
    Elecs. Inc.*, 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007).
28

                                         2

1

B.  Plaintiff Huf

2   Plaintiff Huf purchased an iMac in November 2006.  Huf Compl. ¶ 26.  Huf alleges that

3   his "iMac display began exhibiting prominent vertical lines across its screen" in September 2008.

4   *Id*. ¶ 27.  In addition, Huf alleges that his display experienced "color degradation; the colors, text

5   and border at the bottom of his screen appear[ed] faded and washed out."  *Id*.  The Huf

6   Complaint alleges that the defect giving rise to the display degradation was "inherent" and that

7   Apple was aware of the defect at the time of manufacture.  *Id*. ¶¶ 1, 20, 42, 51.  Huf brings the

8   instant action on behalf of a nationwide class of all persons who purchased a iMAC G5 from

9   January 1, 2005 to the present.  *Id*. ¶ 5.  Huf alleges three claims for relief, also under California

10  law:  (1) unfair and/or unlawful business practices in violation of the UCL; (2) breach of the

11  implied warranty of merchantability in violation of Cal. Com. Code § 2314; and (3) unjust

12  enrichment.

13  **II.  LEGAL STANDARD**

14  A complaint may be dismissed for failure to state a claim upon which relief may be

15  granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its

16  face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Allegations of material fact must

17  be taken as true and construed in the light most favorable to the nonmoving party.  *Cahill v.*

18  *Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997).  *See also Pareto v. FDIC*, 139 F.3d

19  696, 699 (9th Cir. 1998).  However, the Court need not accept as true allegations that are

20  conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden*

21  *State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).  *See also Twombly*, 550 U.S. at 561 ("a

22  wholly conclusory statement of [a] claim" will not survive motion to dismiss).

23  On a motion to dismiss, the Court's review is limited to the face of the complaint and

24  matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

25  1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  However, under

26  the "incorporation by reference" doctrine, the Court also may consider documents which are

27  referenced extensively in the complaint and which are accepted by all parties as authentic.  *In re*

28  *Silicon Graphics, Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir. 1999).  Leave to amend should be

3

1   granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas*

2   *v. Dep't of Corr.*, 66 F. 3d 245, 248 (9th Cir. 1995).

3   **III.  DISCUSSION**

4   A.  Hovsepian FAC

5   As a threshold matter, the parties disagree with respect to whether Hovsepian's CLRA

6   and UCL claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).

7   This issue recently was addressed by the Ninth Circuit in *Kearns v. Ford Motor Co.*, 567 F.3d

8   1120 (9th Cir. 2009), which reiterated that "Rule 9(b)'s heightened pleading standards apply to

9   claims for violations of the CLRA and UCL" where such claims are based on a fraudulent course

10  of conduct. *Id.* at 1124 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir.

11  2003)).  Because Hovsepian's CLRA and UCL claims are predicated on allegedly fraudulent

12  omissions by Apple, those claims are subject to the pleading requirements of Rule 9(b).  *See*

13  *Kearns*, 567 F.3d at 1124; *Vess*, 317 F.3d at 1103-04 (if "the claim is said to be 'grounded in

14  fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the

15  particularity requirement of Rule 9(b).").

16  1.  CLRA Claim

17  Hovsepian alleges that Apple actively concealed material facts with respect to the alleged

18  defect in violation of Cal. Civ. Code § 1770 (a)(5) and § 1770 (a)(7).  Hovsepian FAC ¶ 47.

19  Apple contends that the facts as currently alleged fail to support a cognizable claim under the

20  CLRA, citing *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006).  In

21  *Daugherty*, the plaintiff alleged that an auto manufacturer knowingly concealed a latent defect

22  that arose only after the expiration of the express warranty, and that such allegations formed a

23  cognizable claim under the same provisions of the CLRA at issue in the instant action.  *See id.* at

24  833-34.  However, the Court of Appeal concluded that "although a claim may be stated under the

25  CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary

26  to a representation actually made by the defendant, or an omission of a fact the defendant was

27  obliged to disclose."  *Id.* at 835.  *See also Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th

28  1255, 1276 (2006) (CLRA claim requires allegations that manufacturer was "'bound to disclose'

4

1    [the defect]…or allege[] facts showing [that the manufacturer] ever gave any information of

2    other facts which could have the likely effect of misleading the public").

3        The Hovsepian FAC does not state with sufficient particularity when and where Apple

4    made an affirmative representation, if any, that contradict its alleged omissions.  The operative

5    pleading makes vague references with respect to certain contradictory statements, *see* Hovsepian

6    FAC ¶ 31 ("Apple has responded by uniformly denying, on its website and in its retail stores,

7    customer complaints and has sought to "run out the clock" on the warranties that accompanied

8    the iMac."), but such generalized allegations do not provide the "'the who, what, when, where,

9    and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (citation omitted).  Accordingly,

10   Hovsepian has not stated a cognizable CLRA claim based upon statements made in contradiction

11   to a fraudulent omission.

12       Hovsepian nonetheless argues that the second theory of liability discussed in

13   *Daugherty*—based upon an affirmative duty to disclose—is alleged adequately.  A plaintiff may

14   "successfully pursue a CLRA claim [based on a fraudulent omission], despite *Daugherty* and

15   *Bardin*, if [the manufacturer] was 'obliged to disclose' the potential for problems." *Falk v. Gen.*

16   *Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007).  A duty to disclose exists if one of

17   the following four circumstances is present:  (1) the defendant is in a fiduciary relationship with

18   the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the

19   plaintiff; (3) the defendant actively conceals a material fact from the plaintiff, or (4) the

20   defendant makes partial representations but also suppresses some material facts. *LiMandri v.*

21   *Judkins*, 52 Cal. App. 4th 326, 337 (1997).  Hovsepian argues that he has alleged adequately the

22   second and third *LiMandri* factors, both of which "require the existence of a material fact." *Falk*,

23   496 F. Supp. 2d at 1095.  Materiality exists if the omitted information would cause a reasonable

24   consumer to behave differently if he or she were aware of the information. *See Oestreicher v.*

25   *Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008).  *See also Falk*, 496 F. Supp. 2d at

26   1095 ("Materiality, for CLRA claims, is judged by the effect on a 'reasonable consumer.'")

27   (citation omitted).

28       Again, the Hovsepian FAC fails to comply with Rule 9(b).  The pleading contains only

                                                  5

1    generalized allegations with respect to exclusive knowledge and active concealment.

2    Furthermore, generalized allegations with respect to consumer expectations are insufficient to

3    meet Rule 9(b)'s heightened pleading requirements, especially when the alleged defect

4    manifested itself more than one year after the expiration of the express warranty.  *See*

5    *Oestreicher*, 544 F. Supp. 2d at 971 ("consumer expectations are…subjective and likely

6    unreliable, and…usage will greatly vary from consumer to consumer.").  While the weight of

7    applicable case law casts doubt on the basic viability of Hovsepian's CLRA claim, *see id.* at 972,

8    the Court will dismiss the claim with leave to amend.[4]

9              2.  UCL Claim

10           The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair,

11   deceptive, untrue or misleading advertising."  Cal. Civ. Code § 17200.  Accordingly, "[a]n act

12   can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or

13   fraudulent."  *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544, 1554 (2007).  For an

14   action based upon an allegedly unlawful business practice, the UCL "borrows violations of other

15   laws and treats them as unlawful practices that the unfair competition law makes independently

16   actionable."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180

17   (1999).  A UCL claim predicated on unfair business practices may be grounded upon a violation

18   of a statute, *see Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995), or be a "standalone"

19   claim based on an alleged act that "violates established public policy or if it is immoral,

20

21           [4] Hovsepian relies heavily on *Falk* for the proposition that an allegation of a disappointed
     consumer expectation will defeat a motion to dismiss a CLRA claim.  However, as discussed by
22   the *Oestreicher* court in some detail, knowledge that a product is likely to fail at some point
     cannot give rise by itself to an actionable claim because "[s]uch knowledge is easily
23   demonstrated by the fact that manufacturers must predict rates of failure of particular parts in
     order to price warranties and thus can always be said to 'know' that many parts will fail after the
24   warranty period has expired.  A rule that would make failure of a part actionable based on such
     'knowledge' would render meaningless time/mileage limitations in warranty coverage."
25   *Oestreicher*, 544 F. Supp. 2d at 972 (quoting *Abraham v. Volkswagen of Am., Inc*., 795 F.2d 238,
     250 (2d Cir.1986)).  *Falk* involved the failure of vehicle speedometers, an essential safety feature
26   that a manufacturer may have a duty to disclose.  *See id.* ("policy reasons militate against
     following *Falk* in this situation—where a duty to disclose is being imposed on a manufacturer for
27   a latent non-safety related defect in its product.").

28

6

1  unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its

2  benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).  *See also Cel-Tech*,

3  20 Cal. 4th at 180 ("[A] practice may be deemed unfair even if not specifically proscribed by

4  some other law.").  A claim based upon the fraud prong may be brought based upon conduct akin

5  to common-law fraud or an alleged course of conduct that is likely to deceive the public.  *Bardin*,

6  136 Cal. App. 4th at 1274 ("A violation can be shown even if no one was actually deceived,

7  relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show

8  that members of the public are likely to be deceived.").

9      As discussed above, to the extent that Hovsepian's UCL claim is grounded on a course of

10  fraudulent conduct, the pleading is subject to Rule 9(b).  *See Kearns*, 567 F.3d at 1125.

11  Moreover, *Kearns* held that a UCL claim based on an alleged omission is subject to Rule 9(b),

12  and if a complaint alleges a fraudulent course of conduct, the plaintiff cannot avoid Rule 9(b) by

13  attempting to allege consumer deception without pleading additional allegations.  *See id.* at 1126-

14  27.  The same rule applies to any claim brought under the unfair prong of the UCL.  *See id.* at

15  1127 ("Because Kearns's [complaint] alleges a unified fraudulent course of conduct, his claims

16  against Ford are grounded in fraud. His entire complaint must therefore be pleaded with

17  particularity. Thus, the [complaint] was properly dismissed and no error was committed by not

18  separately analyzing his claims under the unfairness prong of the UCL.").  Similarly, and for the

19  reasons discussed above in Section III.A.1, a derivative UCL claim based on a CLRA violation

20  has not been pled adequately here.

21      Even assuming that Hovsepian may assert a claim under the unfair prong of the UCL

22  without being subject to Rule 9(b) pleading requirements, the operative complaint fails to state a

23  claim.  A standalone claim under the unfair prong of the UCL requires that "the consumer injury

24  is substantial, is not outweighed by any countervailing benefits to consumers or to competition,

25  and is not an injury the consumers themselves could reasonably have avoided."  *Daugherty*, 144

26  Cal. App. 4th at 839.  However, "[t]he failure to disclose a defect that might, or might not,

27  shorten the effective life span of [a product] that functions precisely as warranted throughout the

28  term of its express warranty cannot be characterized as causing a substantial injury to consumers,

7

1   and accordingly does not constitute an unfair practice under the UCL." *Clemens v.*

2   *DaimlerChrysler Corp*., 534 F.3d 1017, 1026-27 (9th Cir. 2008) (quoting *Daugherty*, 144 Cal.

3   App. 4th at 839).  In the instant action, the display screens did operate properly during the one-

4   year express warranty period.  Generalized allegations with respect to consumer expectations, *see*

5   Hovsepian FAC ¶ 21 ("Many current studies suggest that an average LCD screen should last at

6   least 5 years of normal usage without significant screen degradation.") or a statement that Apple

7   "knew" that the screens would fail at some point, *see id.* ¶ 23, are not sufficient.  *See Bardin*, 136

8   Cal. App. 4th at 1273 ("the 'right' upon which plaintiffs actually rely here—the right to have a

9   vehicle containing an exhaust manifold that lasts as long as an 'industry standard' cast-iron

10  exhaust manifold—is one based on a contract such as a warranty, not on a legislatively declared

11  policy.  No law generally requires a manufacturer to use the most expensive or most durable

12  materials in the manufacture of its products.").  Accordingly, the UCL claim will be dismissed

13  with leave to amend.

14         3.  Fraudulent Omission

15       Under California law, the elements of a common-law claim for fraudulent omission are:

16  (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to

17  disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact

18  with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted

19  differently if he had known of the concealed or suppressed fact; and (5) as a result of the

20  concealment or suppression the plaintiff sustained damage.  *See Hahn v. Mirda*, 147 Cal. App.

21  4th 740, 748 (2007).  For the same reasons set forth above, the fraudulent omission claim will be

22  dismissed, with leave to amend in order to comply with Rule 9 (b).

23         4.  Unjust Enrichment

24       Hovsepian's claim for unjust enrichment is premised on the same alleged course of

25  conduct that underlies his CLRA, UCL, and fraudulent omission claims.  *See* Hovsepian FAC ¶

26  86 (incorporating by reference previous allegations); ¶ 90 ("Defendant has been unjustly enriched

27  at the expense of and detriment to Plaintiff and the Class by wrongfully collecting money to

28  which Defendant, in equity, is not entitled.").  In other words, the claim for unjust enrichment

8

1  cannot stand alone as an independent claim for relief.  *See Jogani v. Superior Court*, 165 Cal.

2  App. 4th 901, 911 (2008) ("unjust enrichment is not a cause of action.  Rather, it is a general

3  principle underlying various doctrines and remedies, including quasi-contract.") (citation

4  omitted).  *See also Melchior v. New Line Prods., Inc*., 106 Cal. App. 4th 779, 793 (2003) ("there

5  is no cause of action in California for unjust enrichment.  'The phrase "Unjust Enrichment" does

6  not describe a theory of recovery, but an effect: the result of a failure to make restitution under

7  circumstances where it is equitable to do so.'") (quoting *Lauriedale Assocs., Ltd. v. Wilson*, 7

8  Cal. App. 4th 1439, 1448  (1992)).  Because Hovsepian has failed to allege a substantive claim

9  for relief, the claim for unjust enrichment also will be dismissed with leave to amend.  *See*

10  *Oestreicher*, 544 F. Supp. 2d at 975 ("since plaintiff's fraud-based claims have been dismissed,

11  plaintiff has no basis for its unjust enrichment claim.").  *See also Sanders v. Apple Inc.*, No. C

12  08-1713, 2009 WL 150950, at *9 (N.D. Cal. Jan. 21, 2009) ("[unjust enrichment] claim will

13  depend upon the viability of the Plaintiffs' other claims.").

14  <u>5.  Declaratory Relief</u>

15  An action for declaratory relief requires an actual case or controversy.  *See Williams v.*

16  *Alioto*, 549 F.2d 136, 141 n.4 (9th Cir. 1977).  Because the Declaratory Judgment Act "merely

17  provides an additional remedy in cases where jurisdiction is otherwise established," *Staacke v.*

18  *U.S. Secretary of Labor*, 841 F.2d 278, 280 (9th Cir. 1988), and the Hovsepian FAC presently

19  does not state an independent claim for relief, Apple's motion to dismiss the claim for

20  declaratory relief will be granted with leave to amend.

21  <u>B.  Huf Complaint</u>

22  <u>1.  Breach of Implied Warranty of Merchantability</u>

23  "Merchantability" generally has been construed as a requirement that a product conform

24  to its ordinary and intended use.  *See, e.g.*, *Hauter v. Zogarts*, 14 Cal. 3d 104, 117-18 (1975).

25  Under Cal. Com. Code § 2314(2), products are merchantable if they:

26  (a) Pass without objection in the trade under the contract
   description; and

27  (b) In the case of fungible goods, are of fair average quality within

28  the description; and

9

1

2
(c) Are fit for the ordinary purposes for which such goods are used; and

3

4
(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

5

6
(e) Are adequately contained, packaged, and labeled as the agreement may require; and

7
(f) Conform to the promises or affirmations of fact made on the container or label if any.

8   This implied warranty does not "impose a general requirement that goods precisely fulfill the

9   expectation of the buyer.  Instead, it provides for a minimum level of quality." *Am. Suzuki Motor*

10  *Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295 (1995) (citation omitted).  In other words, a

11  defect must be sufficiently serious so as to render the product unfit for its ordinary purpose.  *See*

12  *id.  See also Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007) ("We reject the

13  notion that merely because a vehicle provides transportation from point A to point B, it

14  necessarily does not violate the implied warranty of merchantability.  A vehicle that smells,

15  lurches, clanks, and emits smoke over an extended period of time is not fit for its intended

16  purpose.").

17          Under California's Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), the

18  duration of the implied warranty of merchantability is "[no] less than 60 days nor more than one

19  year following the sale of new consumer goods to a retail buyer."  Cal. Civ. Code § 1791.1(c).

20  *See also Tietsworth Sears, Roebuck and Co.*, No. C 09-00288, 2009 WL 1363548, at *3 (N.D.

21  Cal. May 14, 2009) ("The duration of the implied warranty of merchantability [under §

22  1791.1(c)] is coextensive with an express warranty, but in no case is shorter than sixty days or

23  longer than one year following sale of the goods."); *Atkinson v. Elk Corp. of Texas*, 142 Cal.

24  App. 4th 212, 230 (2006) ("duration of the implied warranty of merchantability under California

25  law is limited to one year.").  In addition, the express warranty provided by Apple limited the

26  duration of any implied warranty to one year after purchase.

27          Huf argues that the one-year limitation imposed by law does not apply because the defect

28  was "inherent" and Apple was aware of the defect when it sold the computers.  "Implied

10

1    warranties extend to latent defects." *Brittalia Ventures v. Stuke Nursery Co., Inc.*, 153 Cal. App.

2    4th 17, 24 (2007).  In addition, Huf asserts his implied warranty claim under the Commercial

3    Code rather than the Song-Beverly Act.  The applicable provision under the Song-Beverly Act

4    states in relevant part as follows:

5           The duration of the implied warranty of merchantability and where
            present the implied warranty of fitness shall be coextensive in
6           duration with an express warranty which accompanies the
            consumer goods, provided the duration of the express warranty is
7           reasonable; but in no event shall such implied warranty have a
            duration of less than 60 days nor more than one year following the
8           sale of new consumer goods to a retail buyer. Where no duration
            for an express warranty is stated with respect to consumer goods,
9           or parts thereof, the duration of the implied warranty shall be the
            maximum period prescribed above.

10   Cal. Civ. Code § 1791.1(c).  While the Song-Beverly Act limits the duration of the implied

11   warranty of merchantability to one year, a recent decision of the California Court of Appeal in

12   *Mexia v. Rinker Boat Co., Inc*., 174 Cal. App. 4th 1297 (2009) calls into question the

13   applicability of § 1791.1(c) as it applies to latent defects, as well as to the relevance of this

14   provision to an implied warranty claim brought under the Commercial Code.

15          In *Mexia*, the court stated that the Song-Beverly Act acts supplements the Commercial

16   Code, and that it was intended to "provide clarity" with respect to consumer rights.  *Mexia*, 174

17   Cal. App. 4th at 1304.  Nonetheless, the court found that the omission of a time limit from §

18   2314 should be interpreted as meaning that "there is no 'duration' of the implied warranty under

19   the Uniform Commercial Code in any meaningful sense; the product is either merchantable or

20   not (and a breach of the implied warranty occurs or not) only at the time of delivery." *Id*.  *See*

21   *also Larsen v. Nissan N. Am.*, No. A121838, 2009 WL 1766797, at *5 n.6 (Cal. Ct. App. 1st

22   Dist. June 23, 2009) (unpublished) ("[§ 2314] also imposes a warranty of merchantability, but it

23   does not contain a time limit.  In the absence of any indication in the statute that it is intended to

24   supersede or extend Civil Code section 1791.1, we assume that [§ 2314] does not extend the

25   implied warranty with respect to the durability of a product beyond the one year maximum

26   contained in Civil Code section 1791.1.").  Huf thus argues that he may bring an implied

27   warranty claim more than a year after the time of sale.

28

                                              11

1    Apple contends that any defect that manifests itself after the expiration of an express

2    warranty cannot be actionable, and cites several cases in support of a policy that would preclude

3    indefinite extensions of warranty terms.  *Daugherty*, generally considered to be a leading case on

4    this subject, did not involve a claim for breach of an implied warranty.  *See* 144 Cal. App. 4th at

5    831 ("Daugherty makes no implied warranty claims.").  Instead, the plaintiff in *Daugherty*

6    attempted to bring a claim for breach of an express warranty based on the proposition that

7    because the allegedly latent defect was present during the term of the express warranty, then the

8    warranty was breached even though the defect was not ascertainable until after the warranty

9    expired.  *See id.* at 831-32 ("At its core, Daugherty's claim is that because the language of

10   Honda's express warranty did not state that the defect must be 'found,' 'discovered' or 'manifest'

11   during the warranty period, the warranty covers any defect that "exists" during the warranty

12   period, no matter when or whether a malfunction occurs.").  Such a theory clearly would

13   eviscerate any limitations put in place by an express warranty.  *See id.* at 832.  *See also Hoey*,

14   515 F. Supp. 2d at 1105 (for claims brought under similar theory of liability with respect to an

15   express warranty "plaintiffs must allege more than the existence of a warranty and a defect

16   occurring outside the warranty period").[5]

17       In *Oestreicher*, which also did not involve any warranty claims, express or implied, the

18   district court dismissed claims brought under the CLRA and UCL based upon the reasoning that

19   a consumer's expectations with respect to a product's durability cannot be exceed the term of an

20   express warranty.  544 F. Supp. 2d at 972 (quoting *Abraham*, 795 F.2d at 250).  In the context of

21   a UCL or CLRA claim, such reasoning may be correct.  Public policy considerations also may

22   weigh in favor a rule that imposes a time limitation on implied warranty claims.[6]  Yet the Court

23   ─────────────────────

24       [5] The theory of liability propounded by plaintiffs in *Daugherty* and *Hoey* was rejected by
     the Ninth Circuit: "Under California law, time limits in express warranties are effective at

25   limiting the coverage of the warranty to defects that manifest themselves during the specified
     time period."  *Long v. Hewlett-Packard Co.*, 316 Fed. Appx. 585, 585 (9th Cir. 2009).

26

27       [6] Apple contends that *Mexia* cannot be a correct statement of the law because it
     essentially would grant consumers an indefinite warranty in contravention of the holdings in

28   *Daugherty* and *Oestreicher*.  However, and as noted by the court in *Mexia*, any breach of contract

                                                    12

1   need not reach this issue here because manufacturers may impose limitations on implied

2   warranties.  *See* Cal. Com. Code § 2316.  Apple's express warranty clearly limits the duration of

3   any implied warranty of merchantability to one year after the sale.  Klestoff Decl. Ex. A at 2.

4   Huf's allegations to the contrary, namely that the limitation is "unreasonable, unconscionable,

5   and void," are conclusory and presently lack sufficient detail to overcome the presumption of

6   validity.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (the bare "assertion of an unlawful

7   agreement [is] a 'legal conclusion' and, as such, [is] not entitled to the assumption of truth.")

8   (citing *Twombly*, 550 U.S. at 555).  Accordingly, the claim for breach of the implied warranty of

9   merchantability will be dismissed, with leave to amend.[7]

10

11   claim brought under the Commercial Code must be brought within four years of when the cause
     of action accrued, which for a latent defect occurs at the time of sale.  *See* 174 Cal. App. 4th at

12   1306.  Accordingly, it appears that a claim for breach of the implied warranty of merchantability
     must be brought no later than four years after the date of sale, a requirement that is satisfied by

13   the facts as alleged by Huf.  To the extent that *Mexia* conflicts with this Court's orders in
     *Tietsworth* and *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2008 WL 4542967 (N.D.

14   Cal. Oct. 1, 2008), the Court notes that *Mexia* issued after those decisions.  In addition, all of the
     named plaintiffs in *Stearns* purchased their allegedly defective products more than four years

15   prior to bringing suit, and thus their claims under Cal. Com. Code § 2314 or the analogous
     provision under the Uniform Commercial Code are barred even in light of *Mexia*.

16

17       [7] The Court agrees with Apple that the *Mexia* decision appears to be contrary to

18   established California case law with respect to the duration of the implied warranty of
     merchantability as set forth in § 1791.1 of the Song-Beverly Act.  *See*, *e.g.*, *Atkinson*, 142 Cal.

19   App. 4th at 230.  *Mexia* mentions *Atkinson* but does not expressly overrule it.  In addition, two
     weeks after *Mexia*, a separate appellate panel appeared to reaffirm the established rule.  *See*

20   *Larsen*, 2009 WL 1766797, at *5 ("the warranty of merchantability implied as a matter of law in
     California is limited to one year after purchase").  The *Larsen* decision does not mention *Mexia*.

21   As noted above, any component failure could be characterized as having been caused by a latent
     defect, and thus if *Mexia* were read broadly the time limitation imposed by § 1791.1(c) would be

22   meaningless.

23       The import of *Mexia* also may be limited by the fact the court appeared to discuss latent
     defects that rendered the product unmerchantable from the outset.  *See* 174 Cal. App. 4th at

24   1304-1305 ("The implied warranty of merchantability may be breached by a latent defect
     undiscoverable at the time of sale…In the case of a latent defect, a product is rendered

25   unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen
     defect, not by its subsequent discovery.").  The plaintiff in *Mexia* purchased a boat that suffered

26   premature corrosion, the cause of which may have been present from the outset (the record
     appears to have been rather sparse as to that issue).  *Mexia* relied upon *Moore v. Hubbard &*

27   *Johnson Lumber Co.*, 149 Cal. App. 2d 236, 241 (1957), which involved the sale of lumber

28

13

1

2.  UCL Claim

2      The basis for Huf's UCL claim appears to be a breach of an implied warranty or a claim

3  under the unfair prong of the UCL.  As discussed above, Huf has not yet alleged a cognizable

4  implied warranty claim.  With respect to a standalone claim under the unfair prong of the UCL,

5  such a claim requires allegations that "the consumer injury is substantial, is not outweighed by

6  any countervailing benefits to consumers or to competition, and is not an injury the consumers

7  themselves could reasonably have avoided."  *Daugherty*, 144 Cal. App. 4th at 839.  However, as

8  discussed above with respect to the Hovsepian complaint, the failure of a product after the

9  expiration of the term of an express warranty does not constitute an unfair practice under the

10  UCL.  *See Clemens*, 534 F.3d at 1026-27.  The defect in Huf's computer did not manifest itself

11  until after the expiration of the express warranty.  Accordingly, the UCL claim will be dismissed,

12  with leave to amend.[8]

13

3.  Unjust Enrichment

14      Huf's claim for unjust enrichment is premised on the same factual allegations underlying

15  the implied warranty and UCL claims.  Because unjust enrichment is a remedy that cannot

16  standalone apart from a substantive allegation of misconduct, *see Jogani*, 165 Cal. App. 4th at

17  911 (2008), the claim will be dismissed with leave to amend.

18

19

20  ─────────────────

21  infested with beetles.  Thus in *Moore* (and perhaps in *Mexia*), the product was unmerchantable
from day one.  In the instant case, Plaintiffs themselves allege that the display screens worked
22  properly for more than a year.  Accordingly, the display screen was merchantable at the point of
sale, and Huf probably would be barred from bringing a claim under the Song-Beverly Act, even
23  in light of *Mexia*, more than one year after the sale.  *See Larsen*, 2009 WL 1766797, at *6 ("The
implied warranty of merchantability applies primarily to the initial condition of a product,
24  guaranteeing that it performs in a manner appropriate for the ordinary purposes for which such
goods are used…As suggested by the limitation of the warranty to a single year in section 1791.1,
25  the implied warranty of merchantability is not intended to guarantee extended durability.").

26

27      [8] To the extent that Huf's UCL claim is premised on allegations that Apple knew of the
defect and deliberately misled consumers, the amended pleadings would be subject to the
28  heightened pleading requirements of Fed. R. Civ. P. 9(b).  *See Kearns*, 567 F.3d at 1124,
*Oestreicher*, 544 F. Supp. 2d at 974-75.

14

Case Nos. 08-5788 & 09-1064
ORDER GRANTING MOTIONS TO DISMISS ETC.
(JFLC1)

1      C.  Motions to Strike Class Claims

2          Apple seeks to strike the class allegations of both Plaintiffs pursuant to Fed. R. Civ. P.

3  12(f) because the class as currently defined fails to meet the requirements of Fed. R. Civ. P. 23.

4  Because the Court has dismissed all of Plaintiffs' claims with leave to amend, the motions to

5  strike will be denied without prejudice to renewal after Plaintiffs file their amended pleadings.

6                                    **IV.  ORDER**

7          Good cause therefor appearing, the motions to dismiss the Hovsepian FAC and Huf

8  Complaint are GRANTED, with leave to amend.  Plaintiffs shall file their amended complaints

9  within thirty (30) days of the date of this Order.  The motions to strike the class allegations are

10 DENIED without prejudice.

11

12

13 DATED: August 21, 2009

14

15                                     _____
                                       JEREMY FOGEL
16                                     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

                                          15

1   This Order has been served upon the following persons:

2   Albert Quoc Giang     giang@caldwell-leslie.com, crowther@caldwell-leslie.com,
    wilson@caldwell-leslie.com
3

4   Christine M. Ford     cford@mdpcelaw.com

5
    David Michael Walsh , Esq     davidwalsh@paulhastings.com,
6   susanetheredge@paulhastings.com

7
    Eric Andrew Long     ericlong@paulhastings.com, nanettecosentino@paulhastings.com
8

9   Jeffrey I Carton     jcarton@mdpcelaw.com

10  Jerome Noll     jnoll@mdpcelaw.com

11
    Robin Crowther     crowther@caldwell-leslie.com
12

13  Robyn Carrico Crowther     crowther@caldwell-leslie.com, pettit@caldwell-leslie.com,
    robinson@caldwell-leslie.com, strother@caldwell-leslie.com, wilson@caldwell-leslie.com
14

15  Thomas A. Counts     tomcounts@paulhastings.com, davidwalsh@paulhastings.com,
    ericlong@paulhastings.com, marshamcnairy@paulhastings.com
16

17  Brian J. Devine     bdevine@seegersalvas.com, kseeger@seegersalvas.com

18  David R. Buchanan     DBuchanan@SeegerWeiss.com

19  Eric David Freed     eric@freedweiss.com, paul@freedweiss.com, sherrie@freedweiss.com

20  George Kevin Lang     george@freedweiss.com

21  Jonathan Shub     jshub@seegerweiss.com, atorres@seegerweiss.com

22  Kenneth Mark Seeger     kseeger@seegersalvas.com

23  Michael D. Donovan     mdonovan@donovansearles.com

24  Michael J. Boni     mboni@bonizack.com

25  Michael John Lotus     mike@freedweiss.com

26  Tammy Lee Kissman     leekissman@paulhastings.com, nanettecosentino@paulhastings.com

27  Thomas A. Counts     tomcounts@paulhastings.com

28

Case Nos. 08-5788 & 09-1064
ORDER GRANTING MOTIONS TO DISMISS ETC.
(JFLC1)